IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DESHAWN DRUMGO, SR., et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Civ. Action No. 17-188-GMS |
| | ) |
| WARDEN DAVID PIERCE, et al., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM**

**I.   INTRODUCTION**

The plaintiff, DeShawn Drumgo ("Drumgo"), a prisoner housed at the James T. Vaughn Correctional Center ("VCC"), Smyrna, Delaware, commenced this civil rights action pursuant to 42 U.S.C. § 1983 on February 22, 2017.

**II.   BACKGROUND**

On February 22, 2017 and March 7, 2017, Drumgo filed motions for emergency injunctive relief. (D.I. 4, 8) The court ordered a response only as to the medical treatment issues wherein Drumgo asserted a need to see outside physicians for preexisting medical conditions and for injuries he sustained during the February 2017 hostage incident at the VCC.

**III.   DISCUSSION**

A party seeking a preliminary injunction must show: (1) a likelihood of success on the merits; (2) that it will suffer irreparable harm if the injunction is denied; (3) that granting preliminary relief will not result in even greater harm to the nonmoving party; and (4) that the public interest favors such relief. *Kos Pharmaceuticals, Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004) (citation omitted). "Preliminary injunctive relief is 'an extraordinary remedy' and

'should be granted only in limited circumstances.'" *Id.* (citations omitted). Because of the intractable problems of prison administration, a request for injunctive relief in the prison context must be viewed with considerable caution. *Abraham v. Danberg*, 322 F. App'x 169, 170 (3d Cir. 2009) (unpublished) (citing *Goff v. Harper*, 60 F.3d 518, 520 (8th Cir. 1995)).

### A. Medical

Acting warden Phil Parker opposes the motions and provides the declaration of Dr. Vincent Carr ("Dr. Carr"), who oversees the healthcare provided to inmates in Delaware Department of Correction ("DOC") custody through its medical service contract provider. (D.I. 10, ex. A.) Dr. Carr reviewed Drumgo's medical file and states that Drumgo's complaints appear unfounded noting that: (1) Drumgo has been seen and symptomatic treatment has been provided for his complaints of rib pain from contusions and wrist pain from cuffs; (2) prescription lenses were ordered for Drumgo on February 27, 2017, and he was provided with temporary reading glasses in the meantime; (3) Drumgo underwent an extensive medical examination on February 10, 2017; (4) x-rays taken of Drumgo's ribs did not reveal signs of a break; and (5) records indicate that a follow-up evaluation for Drumgo's wrist problems may be needed. (*Id.*)

"[A] prisoner has no right to choose a specific form of medical treatment," so long as the treatment provided is reasonable. *Harrison v. Barkley*, 219 F.3d 132, 138-140 (2d Cir. 2000). An inmate's claims against members of a prison medical department are not viable under § 1983 where the inmate receives continuing care, but believes that more should be done by way of diagnosis and treatment and maintains that options available to medical personnel were not pursued on the inmate's behalf. *Estelle v. Gamble*, 429 U.S. 97, 107 (1976). Finally, "mere disagreement as to the proper medical treatment" is insufficient to state a constitutional violation.

*See Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004) (citations omitted). Dr. Carr's uncontroverted affidavit indicates that Drumgo is receiving medical care. Given the record before the court, Drumgo has not demonstrated the likelihood of success on the merits and, therefore, injunctive relief is not appropriate.

### B. Property

Drumgo also seeks the return of all items confiscated from his cell that apparently were taken following the February 2017 hostage incident. This includes personal property as well as legal property. To the extent, Drumgo seeks return of personal property, a claim based on the deprivation of his personal property is not actionable under § 1983 unless there is no adequate post-deprivation remedy available. *See Parratt v. Taylor*, 451 U.S. 527, 542 (1981), overruled on other grounds by 474 U.S. 327 (1986); *Harris v. McMullen*, 609 F. App'x 704, 705 (3d Cir. 2015) (unpublished). Because Delaware provides an adequate remedy by filing a common law claim for conversion of property, Drumgo has failed to demonstrate the likelihood of success on the merits and, therefore, injunctive relief is not appropriate.

With regard to his legal documents, prisoners must be allowed "adequate, effective and meaningful" access to the courts. *Bounds v. Smith*, 430 U.S. 817, 822 (1977). "Many courts have found a cause of action for violation of the right of access stated where it was alleged that prison officials confiscated and/or destroyed legal materials." *Zilich v. Lucht*, 981 F.2d 694, 695 (3d Cir. 1992) (citations omitted). However, for a denial of the right of access to the courts, Drumgo must show that he was actually injured by such interference. *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *Oliver v. Fauver*, 118 F.3d 175, 178 (3d Cir. 1997). Drumgo has made no such

showing. Again, Drumgo has failed to demonstrate the likelihood of success on the merits and, therefore, injunctive relief is not appropriate.

### C. Housing Assignment

Finally, Drumgo seeks injunctive relief because he has been housed in solitary confinement for more than a month without a hearing or a write-up. Drumgo states that in March 2016, he was classified to medium housing security and contends that his current housing assignment violates his right to due process. While not clear, it appears that his housing status changed as a result of the February 2017 hostage incident.

It is well established that an inmate does not possess a liberty interest arising from the Due Process Clause in assignment to a particular custody level or security classification or a place of confinement. *See Wilkinson v. Austin*, 545 U.S. 209, 221-22 (2005) (Constitution does not give rise to liberty interest in avoiding transfer to more adverse conditions of confinement); *Olim v. Wakinekona*, 461 U.S. 238, 245 (1983); *Meachum v. Fano*, 427 U.S. 215, 224-25 (1976). The custody placement or classification of state prisoners within the State prison system is among the "wide spectrum of discretionary actions that traditionally have been the business of prison administrators rather than of the federal courts." *Meachum*, 427 U.S. at 225. "'As long as the conditions or degree of confinement to which [a] prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight.'" *Hewitt v. Helms*, 459 U.S. 460, 468 (1983) (quoting *Montanye v. Haymes*, 427 U.S. 236, 242 (1976)). *See also Sandin v. Conner*, 515 U.S. 472, 480 (1995).

4

Drumgo can succeed under the Due Process Clause only if state law or regulation has created a constitutionally-protected liberty interest in remaining free from administrative detention. However, neither Delaware law nor Department of Correction regulations create a liberty interest in a prisoner's classification within an institution. *See* 11 Del. C. § 6529(e). Drumgo has failed to demonstrate the likelihood of success on the merits and, again, injunctive relief is not appropriate.

## IV. CONCLUSION

For the above reasons, the court will deny the plaintiff's motions for emergency injunctions. (D.I. 4, 8.)

An appropriate order will be entered.

_____
UNITED STATES DISTRICT JUDGE

March 31, 2017
Wilmington, Delaware

5