IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DESHAWN DRUMGO, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. No. 17-188-GMS |
| | ) |
| WARDEN DAVID PIERCE, et al., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM**

The plaintiff DeShawn Drumgo ("Drumgo"), a former inmate at the James T. Vaughn Correctional Center ("VCC") in Smyrna, Delaware, now housed at SCI Coal Township in Coal Township, Pennsylvania, filed this lawsuit pursuant to 42 U.S.C. § 1983. He proceeds *pro se* and has been granted leave to proceed *in forma pauperis*. (*See* D.I. 12.) On May 9, 2017, the case was closed upon Drumgo's motion to withdraw the complaint. (*See* D.I. 18, 19.) Drumgo filed a motion to reopen the case, granted by the court on November 17, 2017. (D.I. 25, 26.) The original complaint (D.I. 2) and its amendment (D.I. 7), together, consist of the operative pleading. (*See* D.I. 25.) The court now proceeds to review and screen the complaint pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(a).

**I.    THE COMPLAINT**

Drumgo raises claims relating to the February 2017 prison siege at the VCC. Also named as plaintiffs are "One Hundred and Fifteen Men & Witnesses." Drumgo was housed in C-Building where the eighteen-hour siege took place. He alleges that in 2016 he was classified to medium security and wrongfully housed in C-Building. Drumgo alleges that inadequate staffing

or lack of proper staffing caused him to be taken hostage, the VCC failed to protect him, and it deprived him of due process because of a situation it failed to control.

Drumgo alleges he was laying face down with two other inmates waiting to be rescued, and instead, John Doe officers rushed the cell, stepped on his head and back and punched him. Drumgo alleges that zip ties were placed on him very tightly and when he stated he was not resisting he was punched in the left side of his face and his glasses were broken. During this time, his sneakers were taken. He was taken from the cell and dragged and beaten from B-tier all the way to the yard. He alleges he was punched, choked, and pepper sprayed. He alleges that he suffered a brutal beating while zip tied and the beating was given by the hands of the Delaware State Police, Maryland Police, and Delaware Department of Correction ("DOC") officers, other John Does, and VCC officers Beale, Mitchell, and Marvel.

Drumgo was walked to medical, barefoot, and wearing only undergarments in 30 degree weather. He was seen by a nurse and alleges that he "received no treatment." At the time the Drumgo filed the complaint, he sought an immediate injunction to obtain treatment for his injuries. However, the request is moot, given that Drumgo is no longer housed at the VCC. He also alleges that as a result of the siege he suffers from nightmares and flashbacks and sought mental health treatment, to no avail.

Drumgo alleges that following the siege he was subjected to unconstitutional conditions of confinement for nine days. The conditions included deprivation of clothing, sheets, blankets, and the basic necessities of life. He submitted grievances to no avail. He alleges that his legal work was taken, and he was told it was "intentionally destroyed" along with other inmates'

property. He also alleges his personal property was taken including photos, shower shoes, and soap.

Drumgo alleges that the defendant Delaware Governor John Carney ("Carney") is responsible for: the denial of due process; excessive force; deliberate indifference to Drumgo's medical needs; failure to protect after invoking security; destroying and/or depriving Drumgo of his litigation, legal papers, and personal property; failing to protect Drumgo from becoming a hostage held for 18 hours; not protecting Drumgo from the beating by underlings and authorities; not making sure he received adequate medical care; and having Drumgo housed in "medium high" housing when he has been classified to medium since March 2016.

Drumgo alleges that the defendant Deputy Warden Parker ("Parker") is responsible for placing him in the "war zone" when he was housed in maximum security with no write-up, no charge, and no due process.

On March 7, 2017, Drumgo amended his complaint by seeking an emergency injunction to "restrain" continued punishment. (D.I. 7.) Drumgo alleges violations of his right to due process complains because he was housed for over a month in SHU, the same as solitary confinement. He complains that he spent 23 hours per day locked in a cell with no radio, television, headphones, legal work sneakers, or shower shoes. He was required to eat in his cell and was not allowed to go to school, private mental health meetings, or accumulate good time credits. He complains of nerve damage in his hands, pain in his ears, and headaches resulting from the beating he received during the prison siege.

Drumgo complains that he was interviewed by an Internal Affairs Officer and two homicide detectives and when he would not talk to them, a corrections officer left him in an

3

interview room for an hour. Drumgo alleges this made it look like he was a snitch because everyone else returned in five to ten minutes and this placed his life and safety at risk. Finally, Drumgo complains that he no longer has his usual contact visits.

Drumgo seeks compensatory damages and injunctive relief including the return of his legal work and personal property.

## II. STANDARD OF REVIEW

A federal court may properly dismiss an action *sua sponte* under the screening provisions of 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b) if "the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief." *Ball v. Famiglio*, 726 F.3d 448, 452 (3d Cir. 2013); *see also* 28 U.S.C. § 1915(e)(2) (*in forma pauperis* actions); 28 U.S.C. § 1915A (actions in which prisoner seeks redress from a governmental defendant); 42 U.S.C. § 1997e (prisoner actions brought with respect to prison conditions). The court must accept all factual allegations in a complaint as true and take them in the light most favorable to a pro se plaintiff. *Phillips v. County of Allegheny*, 515 F.3d 224, 229 (3d Cir. 2008); *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Because Drumgo proceeds *pro se*, his pleading is liberally construed and his complaint, "however in artfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. at 94 (citations omitted).

An action is frivolous if it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Under 28 U.S.C. § 1915(e)(2)(B)(i) and § 1915A(b)(1), a court may dismiss a complaint as frivolous if it is "based on an indisputably merciless legal theory" or a "clearly baseless" or "fantastic or delusional" factual scenario. *Neitzke*, 490 at 327-

4

28; *Wilson v. Rackmill*, 878 F.2d 772, 774 (3d Cir. 1989); *see, e.g., Deutsch v. United States*, 67 F.3d 1080, 1091-92 (3d Cir. 1995) (holding frivolous a suit alleging that prison officials took an inmate's pen and refused to give it back).

The legal standard for dismissing a complaint for failure to state a claim pursuant to § 1915(e)(2)(B)(ii) and § 1915A(b)(1) is identical to the legal standard used when ruling on Rule 12(b)(6) motions. *Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999) (applying Fed. R. Civ. P. 12(b)(6) standard to dismissal for failure to state a claim under § 1915(e)(2)(B)). However, before dismissing a complaint or claims for failure to state a claim upon which relief may be granted pursuant to the screening provisions of 28 U.S.C. §§ 1915 and 1915A, the court must grant Drumgo leave to amend his complaint unless amendment would be inequitable or futile. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002).

A well-pleaded complaint must contain more than mere labels and conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). A plaintiff must plead facts sufficient to show that a claim has substantive plausibility. *See Johnson v. City of Shelby*, __U.S.__, 135 S.Ct. 346, 347 (2014). A complaint may not dismissed, however, for imperfect statements of the legal theory supporting the claim asserted. *See id.* at 346.

Under the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps: (1) take note of the elements the plaintiff must plead to state a claim; (2) identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth; and (3) when there are well-pleaded factual allegations, the court should assume their veracity and then determine whether they plausibly

give rise to an entitlement to relief. *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (internal citations and quotations omitted). Elements are sufficiently alleged when the facts in the complaint "show" that the plaintiff is entitled to relief. *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). Deciding whether a claim is plausible will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

## III. DISCUSSION

### A. Personal Involvement/Respondeat Superior

Named defendants include former VCC Warden David Pierce ("Pierce"), Commissioner Perry Phelps ("Phelps"), and Governor Carney all of whom held supervisor positions. It is well established that claims based solely on the theory of respondeat superior or supervisor liability are facially deficient. *See Iqbal*, 556 U.S. at 676-77; *see also Solan v. Ranck*, 326 F. App'x 97, 100-01 (3d Cir. 2009) (unpublished) (holding that "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of respondeat superior"). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).

It is clear in reading Drumgo's allegations that he named Governor Carney as a defendants based upon the office he holds. However, in the allegations against Carney, Drumgo presents no more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *See Iqbal*, 556 U.S. at 678. Nor does the complaint allege any

6

direct or personal involvement by Pierce, Phelps, or Major Carrothers ("Carrothers"). Indeed, there is no mention of them except to describe them as defendants.

Therefore, all claims against Pierce, Phelps, Carney, and Carrothers will be dismissed as frivolous pursuant to 28 U.S.C. §§1915(e)(2)(B)(i) and 1915A(b)(1).

### B. Housing/Classification

Drumgo raises two housing/classification claims. The first is raised against Parker. Drumgo alleges that he was classified to medium in 2016 and wrongfully housed in maximum security in C-Building. Drumgo alleges that Parker is responsible for placing him in the "war zone," presumably referring to C-Building.

The second housing/classification claim concerns his placement in SHU following the prison siege. Drumgo alleges for over a month he spent 23 hours per day locked in a cell with no radio, television, headphones, legal work sneakers, or shower shoes. He ate in his cell and was not allowed to go to school, private mental health meetings, or accumulate good time credits.

To succeed on his claims, Drumgo must demonstrate that he was deprived of a liberty interest. *Fraise v. Terhune*, 283 F.3d 506, 522 (3d Cir. 2002). The Due Process Clause does not subject an inmate's treatment by prison authorities to judicial oversight as long as the degree of confinement or conditions to which the inmate is subjected are within the sentence imposed and do not otherwise violate the Constitution. *Id.* (citing *Hewitt v. Helms*, 459 U.S. 460, 468 (1983)). Because maximum security or housing in SHU is the sort of confinement that Drumgo should reasonably anticipate receiving at some point in his incarceration, his transfer to less amenable and more restrictive custody does not implicate a liberty interest that arises under the Due Process Clause. *Torres v. Fauver*, 292 F.3d 141, 150 (3d Cir. 2002). Nor does Delaware state

7

law create liberty interests that are protected by the Due Process Clause and implicated here. *See Carrigan v. Delaware*, 957 F. Supp. 1376, 1385 (D. Del. 1997) ("Repeatedly, this [c]ourt has determined that the State of Delaware has created no constitutionally protected interest in a prisoner's classification."); 11 Del. C. § 6529(e) (giving the Department of Corrections power to maintain "any" system of classification at its institutions). Furthermore, it has been held that in administrative custody for a period as long as fifteen months is not an atypical and significant hardship. *Griffin v. Vaughn*, 112 F.3d 703, 708 (3d Cir. 1997). At the time that he filed his complaint and amendment, Drumgo had been housed in SHU for a little over a month. *Sandin v. Conner*, 515 U.S. 472, 484 (1995).

Drumgo's housing/classification claims are frivolous and will be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1). *See Fountain v. Vaughn*, 679 F. App'x 117 (3d Cir. 2017) (unpublished).

### C. Conditions of Confinement

Drumgo alleges that following the siege he was subjected to unconstitutional conditions of confinement for nine days. The conditions included deprivation of clothing, sheets, blankets, and the basic necessities of life.

A condition of confinement violates the Eighth Amendment only if it is so reprehensible as to be deemed inhumane under contemporary standards or such that it deprives an inmate of minimal civilized measure of the necessities of life. *See Hudson v. McMillian*, 503 U.S. 1, 8 (1992); *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). When an Eighth Amendment claim is brought against a prison official it must meet two requirements: (1) the deprivation alleged must be, objectively, sufficiently serious; and (2) the prison official must have been deliberately

8

indifferent to the inmate's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Deliberate indifference is a subjective standard in that the prison official must actually have known or been aware of the excessive risk to inmate safety. *Beers-Capitol v. Whetzel*, 256 F.3d 120, 125 (3d Cir. 2001).

Although the conditions following the siege may have been harsher than what Drumgo was accustomed to, they were time-limited and did not constitute a denial of "the minimal civilized measures of life's necessities." *See, e.g., Williams v. Delo*, 49 F.3d 442, 444–47 (8th Cir. 1995) (holding no Eighth Amendment violation where prisoner was placed in a strip cell without clothes, the water in the cell was turned off and the mattress removed, and prisoner's bedding, clothing, legal mail, and hygienic supplies were withheld). In addition, Drumgo named no specific individual, nor has he alleged that prison officials knew of, and disregarded, an excessive risk to his health or safety. *See Beers-Capitol*, 256 F.3d at 125. The claim is frivolous and, therefore, will be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1).

### D. Personal Property

Drumgo complains that his personal property was taken and destroyed following the prison siege. A due process claim based on the deprivation of personal property is not actionable under § 1983, whether the deprivation is negligent or intentional, unless there is no adequate post-deprivation remedy available. *See Parratt v. Taylor*, 451 U.S. 527, 542 (1981), overruled on other grounds by 474 U.S. 327 (1986)); *Harris v. McMullen*, 609 F. App'x 704, 705 (3d Cir. 2015) (unpublished). Because Delaware provides an adequate remedy by filing a common law claim for conversion of property, Drumgo cannot maintain a cause of action pursuant to § 1983

9

and the claim is subject to summary dismissal. *Harris*, 609 F. App'x at 705. It will be dismissed as frivolous pursuant to 28 U.S.C. §§1915(e)(2)(B)(i) and 1915A(b)(1).

### E. Legal Property

Drumgo alleges that his legal work was confiscated following the prison siege. Prisoners must be allowed "adequate, effective and meaningful" access to the courts. *Bounds v. Smith*, 430 U.S. 817, 822 (1977) (holding that prisons must give inmates access to law libraries or direct legal assistance). "Many courts have found a cause of action for violation of the right of access stated where it was alleged that prison officials confiscated and/or destroyed legal materials." *Zilich v. Lucht*, 981 F.2d 694, 695 (3d Cir. 1992) (citations omitted).

A violation of the First Amendment right of access to the courts is only established where a litigant shows that he was actually injured by the alleged denial of access. The actual injury requirement is a constitutional prerequisite to suit. *Lewis v. Casey*, 518 U.S. 343, 351 (1996); *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (explaining that the constitutional right of access is "ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court").

As pled, there are no allegations that Drumgo was actually injured by he alleged denial of access to his legal property. Therefore, the claim will be dismissed as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1).

### F. Excessive Force

Drumgo will be allowed to proceed with his excessive force claims against Marvel, Beale, Mitchell, and John Doe defendants.

10

### G. One Hundred and Fifteen Men & Witnesses

The court will dismiss the plaintiffs One Hundred and Fifteen Men & Witnesses. Drumgo is not an attorney and may not represent other individuals. *See In the Matter of Chojecki*, 2000 WL 679000, at *2 (E.D. Pa. May 22, 2000) (citing *United States v. Stepard*, 876 F. Supp. 214, 215 (D. Ariz. 1994) ("Although a non-attorney may appear in propria persona on his own behalf, that privilege is personal to him and he has no authority to appear as the attorney for anyone other than himself.")).

## IV. MISCELLANEOUS MOTIONS

Drumgo's habit is to file one motion and apply it to multiple cases even though the issues are not identical and the cases are not in the same posture. The result is confusion. Therefore, Drumgo is placed on notice that in the future, motions of this type (similar to D.I. 27, 28, and 29), will be docketed but not considered.

### A. Request for Counsel

Drumgo seeks counsel on the grounds that he is being transferred from prison to prison, each time he is transferred he loses his documents, he has little to no legal resources because there is not up-to-date case law due to the backward prison where he is held, counsel is necessary for a thorough investigation, expert witnesses will be necessary, he is unable to retain counsel, his mail is often destroyed, and he is indigent. (D.I. 27, 28, 32.)

A *pro se* litigant proceeding *in forma pauperis* has no constitutional or statutory right to representation by counsel.[1] *See Brightwell v. Lehman*, 637 F.3d 187, 192 (3d Cir. 2011); *Tabron*

---

[1] *See Mallard v. United States Dist. Court for the S. Dist. of Iowa*, 490 U.S. 296 (1989) (§ 1915(d) (now § 1915(e)(1)) does not authorize a federal court to require an unwilling attorney

11

*v. Grace*, 6 F.3d 147, 153 (3d Cir. 1993). However, representation by counsel may be appropriate under certain circumstances, after a finding that a plaintiff's claim has arguable merit in fact and law. *Tabron*, 6 F.3d at 155.

After passing this threshold inquiry, the court should consider a number of factors when assessing a request for counsel. Factors to be considered by a court in deciding whether to request a lawyer to represent an indigent plaintiff include: (1) the merits of the plaintiff's claim; (2) the plaintiff's ability to present his or her case considering his or her education, literacy, experience, and the restraints placed upon him or her by incarceration; (3) the complexity of the legal issues; (4) the degree to which factual investigation is required and the plaintiff's ability to pursue such investigation; (5) the plaintiff's capacity to retain counsel on his or her own behalf; and (6) the degree to which the case turns on credibility determinations or expert testimony. *See Montgomery v. Pinchak*, 294 F.3d 492, 498-99 (3d Cir. 2002); *Tabron*, 6 F.3d at 155-56. The list is not exhaustive, nor is any one factor determinative. *Tabron*, 6 F.3d at 157.

After reviewing the plaintiff's requests, the court concludes that the case is not so factually or legally complex that requesting an attorney is warranted. Drumgo is an experienced *pro se* litigator and to date, the filings in this case demonstrate his ability to articulate his claims and represent himself. In addition, this case is in its early stages and the defendants have yet to be served. Thus, in these circumstances, the court will deny without prejudice to renew the plaintiff's requests for counsel. (D.I. 27, 28, 32.) Should the need for counsel arise later, one can be appointed at that time.

---

to represent an indigent civil litigant, the operative word in the statute being "request.").

## B. Injunctive Relief

The title of Drumgo's motion is "motion of injunction to force the Department of Justice to compel Delaware DOC to order [its] contractors of PA DOC to turn over Plaintiff's legal documents concerning this case." (D.I. 27.) A party seeking a preliminary injunction must show: (1) a likelihood of success on the merits; (2) that it will suffer irreparable harm if the injunction is denied; (3) that granting preliminary relief will not result in even greater harm to the nonmoving party; and (4) that the public interest favors such relief. *Kos Pharmaceuticals, Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004) (citation omitted). "Preliminary injunctive relief is 'an extraordinary remedy' and 'should be granted only in limited circumstances.'" *Id.* (citations omitted). Because of the intractable problems of prison administration, a request for injunctive relief in the prison context must be viewed with considerable caution. *Abraham v. Danberg*, 322 F. App'x 169, 170 (3d Cir. 2009) (unpublished) (citing *Goff v. Harper*, 60 F.3d 518, 520 (8th Cir. 1995)).

While not clear, it seems that Drumgo argues that his lost legal materials contained a motion for reconsideration in the form of an appeal that he is unable to retrieve or send and this causes him irreparable harm. As Drumgo knows from a prior order entered in this case, for him to prevail on a denial of the right of access to the courts, he must show that he was actually injured by such interference. *(See* D.I. 13, 14); *see also Lewis v. Casey*, 518 U.S. at 349; *Oliver v. Fauver*, 118 F.3d 175, 178 (3d Cir. 1997). Other than his conclusory statements, Drumgo has made no such showing. Drumgo has failed to demonstrate the likelihood of success on the merits and, therefore, injunctive relief is not appropriate. The motion will be denied. (D.I. 27.)

13

### C. Motion to Withdraw Jury Demand

Drumgo's complaint contains a jury demand. (D.I. 2.) He filed a motion to amend the complaint that seeks to have the matter proceed as a bench trial. (D.I. 29.) The motion states, "I don't think the defense will oppose." (D.I. 29.) To the contrary, the defendants do not waive their right to a jury trial. (D.I. 30, 31.)

Although it was Drumgo who made the jury demand, his jury demand "operate[s] as a demand" by the defendants. *See Yates v. Dann*, 223 F.2d 64, 66 (3d Cir. 1955). In addition, Federal Rule of Civil Procedure 38(d) requires consent of the parties before a jury demand may effectively be withdrawn. *See* Fed. R. Civ. P. 38(d). "The consent requirement contained in Rule 38 ensures that one party may rely on another's jury demand." *Bowers v. City of Philadelphia*, 2008 WL 5234357, at *6 (E.D. Pa. Dec. 12, 2008) (citations omitted). The parties have not consented to withdraw the jury demand. Notably, the defendants expressly do not waive their right to a jury trial. (D.I. 30, 31). Therefore, the motion will be denied. (D.I. 29.)

### D. Motion for Scheduling Order

Drumgo filed a motion for a scheduling order. (D.I. 32.) The defendants have not been served in this matter, and the case is in its early stages. Therefore, the motion will be denied as premature without prejudice to renew. (D.I. 32.)

### V. CONCLUSION

For the above reasons, the court will: (1) allow Drumgo to proceed on excessive force claims against Marvel, Beale, Mitchell, and Doe Defendants; (2) dismiss all remaining claims and the defendants Pierce, Phelps, Carney, Carrothers, and Parker as frivolous pursuant to 28 U.S.C. §§1915(e)(2)(B)(i) and 1915A(b)(1); (3) dismiss the plaintiff One Hundred and Fifteen

14

Men & Witnesses; (4) deny without prejudice to renew the plaintiff's requests for counsel (D.I. 27, 28, 32); (5) deny the motion for injunctive relief (D.I. 27); (6) deny the motion to withdraw jury demand (D.I. 29); and (7) deny as premature without prejudice to renew the motion for scheduling order (D.I. 32).

A separate order shall issue.

UNITED STATES DISTRICT JUDGE

Nov. 12, 2018
Wilmington, Delaware